**Jarvis Semmes WOLFE, Petitioner,**

v.

**Steve W. PUCKETT, et al., Respondents.**

**Civ. A. No. WC 91–36–D–D.**

United States District Court,
N.D. Mississippi, W.D.

Nov. 26, 1991.

Jarvis Semmes Wolfe, pro se.

W. Edward Hatten, Sp. Asst. Atty. Gen., Jackson, Miss., for respondents.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This matter is before the court on respondents' objections to the report and recommendation of United States Magistrate Judge Jerry A. Davis dated July 11, 1991.

In that report and recommendation, the magistrate judge, finding that the core concerns of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1964), had not been met in the taking of petitioner's guilty plea, recommended that federal habeas corpus relief be granted. The court declines to accept the report and recommendation and concludes that the petition for writ of habeas corpus should be denied for the reasons set forth below.

## FACTUAL BACKGROUND

Petitioner, Jarvis Semmes Wolfe, plead guilty in February 1986, to a charge of kidnapping and aggravated assault in the Circuit Court of Marshall County, Mississippi. He was sentenced to serve concurrent terms of twenty-four and twenty years in the custody of the Mississippi Department of Corrections. Wolfe is presently incarcerated in the Mississippi State Penitentiary at Parchman. Having exhausted his available state remedies, Wolfe seeks review in this court. He claims that his guilty plea was not knowingly, intelligently and voluntarily entered and appears to also assert a claim of ineffective assistance of counsel.[1] Petitioner particularly relies upon Rule 3.03 of the Mississippi Uniform Criminal Rules of Circuit Court Practice[2] for the proposition that the state circuit judge who took his plea should have, and did not, take an active role in determining that the plea was voluntary and intelligent. Wolfe further relies upon *United States v. Pierce,* 893 F.2d 669 (5th Cir.1990), *United States v. Bernal,* 861 F.2d 434 (5th Cir. 1988), *cert. denied,* 493 U.S. 872, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989), *United States v. Punch,* 709 F.2d 889 (5th Cir.1983), and *United States v. Dayton,* 604 F.2d 931 (5th Cir.1979) (en banc), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980), all of which involved guilty plea hearings by *federal* trial courts and all of which discussed the requirements of Rule 11 of the Federal Rules of Criminal Procedure.[3]

---

1. Although the ineffective assistance of counsel claim is not addressed in the Report and Recommendation and does not appear in Respondents' Objections to the Report and Recommendation, the claim was raised in Wolfe's petition under 28 U.S.C. § 2254. Therefore, the court will address the claim here.

2. Rule 3.03(2) and (3) of the Mississippi Uniform Criminal Rules of Circuit Court Practice provides:

   (2) Voluntariness. Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception or improper inducements. A showing that the plea of guilty was voluntary and intelligently made must appear in the record;

   (3) Advice to the Defendant. When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:
   A. That the accused is competent to understand the nature of the charge against him;
   B. That the accused understands the nature and consequences of his plea, and the maximum and minimum penalties provided by law;
   C. That the accused understands that by pleading guilty he waives his constitutional rights of trial by jury, the right to confront and cross-examine adverse witnesses, the right against self-incrimination;

   D. If the accused is not represented by counsel, that he is aware of his right to counsel at every stage of the proceeding and that one will be appointed to represent him if he is indigent.

3. Rule 11(c) and (d) of the Federal Rules of Criminal Procedure provides:

   (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
   (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution of any victim of the offense; and
   (2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and
   (3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance

The transcript of the guilty plea in petitioner's case, taken before Marshall County Circuit Judge W.W. Brown on February 18, 1986, reads as follows:

BY THE COURT: Cause Numbers 8214 and 8216, Miss Carole, State versus Jarvis Simmons Wolfe; 8214, charge of kidnapping; 8216, charge of aggravated assault.

Mr. Wolfe, back on January 13th, 1986, you waived arraignment and entered pleas of not guilty to these charges, and today, you've petitioned the Court to accept pleas of guilty. Have you fully discussed this with your lawyer, Mr. Doxey, and you [sic] lawyer, Mr. Jones?

BY MR. WOLFE: I've discussed it with Mr. Ki, Mr. Jones.

BY THE COURT: Okay, and do you feel like you fully understand what you're doing?

BY MR. WOLFE: Yes, sir.

BY THE COURT: I'm sure he's told you if the Court accepts this plea what the maximum and minimum sentences are on the charges?

BY MR. WOLFE: Yes, sir.

BY THE COURT: And you fully understand that?

BY MR. WOLFE: Yes, I do.

BY THE COURT: You do understand that before a judgment of conviction could be entered against you that you have a right to have twelve qualified jurors placed in the jury box, and the burden is on the State to prove you guilty beyond a reasonable doubt to the satisfaction of each and every one of the jurors as to the elements of the crime, and if they were to convict you, you'd

have an appeal to the State Supreme Court or other Appellate Court relative to any errors that this Court might have committed in the trial of the case. But now if I accept your pleas on this petition to these two charges and enter judgments in those two charges, those are full and final judgments. You're waiving all rights of appeal. You understand that?

BY MR. WOLFE: Yes, I understand.

BY THE COURT: Knowing that, do you still desire to offer your pleas of guilty to the Court?

BY MR. WOLFE: Yes, sir.

BY THE COURT: Now, you were served with copies of the indictments and know what you were charged with in each of the charges.

BY MR. WOLFE: Yes, sir.

BY THE COURT: And you understand that. Mr. Jones has explained to you each essential element of the crime. Did you commit those crimes?

BY MR. WOLFE: Yes, sir.

BY THE COURT: All right. The Court accepts your pleas of guilty … I'm going to defer passing sentence until … the 28th day of February here in the courtroom, and I'll call for a presentence investigation …

State Court Record, Vol. I, pp. 74–76.

The State Court Record further shows that on February 28, 1986, Judge Brown held a sentencing hearing at which witnesses, including the petitioner, spoke on his behalf. At that hearing, Judge Brown asked petitioner:

of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and

(4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to trial; and

(5) if the court intends to question the defendant under oath, on the record and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

(d) Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats of or promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

Q. Jarvis, how do you feel about this sentence? You know your charges. Right? And you offered a plea to those. Right?

A. Yes, sir.

Q. How do you feel about it now?

A. Well, I feel like I made a mistake, and I should admit to it, and that's why I'm admitting to it.

State Court Record, Vol. II, pp. 10–11. Although the State had recommended a thirty-year sentence plus two hundred dollars restitution on the kidnapping charge and a concurrent, twenty-year sentence on the aggravated assault charge, Judge Brown sentenced Wolfe to twenty-four years on the kidnapping charge plus restitution. Following the recommendation of the State, Judge Brown sentenced Wolfe to serve twenty years on the aggravated assault charge to run concurrently with the kidnapping charge. State Court Record, Vol. II, pp. 11–12.

In May of 1988, after serving more than two years of his sentence, petitioner filed a motion for post-conviction relief. A hearing on the motion was held before Circuit Judge William R. Lamb on November 17, 1989. There, Wolfe agreed that he was only seeking review of the conviction for kidnapping charge and its corresponding twenty-four year sentence. State Court Record, Vol. II, p. 15.[4] He explained, "I'm not saying that I'm not guilty, you know. It's that at the time, I was eighteen years old. That was over four years ago, and I have, you know lived a troubled life, and now ... I'm asking for relief." State Court Record, Vol. II, pp. 15–16. Wolfe also stated that he wanted to rehabilitate himself, pp. 15–16. Wolfe also stated that he wanted to rehabilitate himself, adding that "[J]ust because I committed those crimes" did not mean that he was insincere

in his intention to improve. State Court Record, Vol. II, p. 16.[5] While admitting his guilt, Wolfe nevertheless maintained that his lawyer tricked him into pleading guilty. However, Wolfe offered no proof or testimony on this allegation even after several requests from Judge Lamb. Several times, Judge Lamb tried to steer Wolfe away from such statements as "I deserve a break" and "I ... ask you to have mercy on me," *see* State Court Record, Vol. II, p. 16, to the relevant issue at hand, i.e. whether the petitioner was coerced into pleading guilty. The following colloquy is illustrative:

BY THE COURT: You filed a petition in this case alleging that your lawyer tricked you into pleading guilty to kidnapping, and that you didn't know what you were pleading guilty to, and therefore, it was not a voluntary plea.

BY MR. WOLFE: All that was true.

BY THE COURT: Do you have any proof or do you want ...

BY MR. WOLFE: No.

BY THE COURT: Or do you want to take the witness stand and substantiate that in any way.

BY MR. WOLFE: Yes sir. Your honor, as far as having, you know, proof that ... the lawyer tricked me, you know, that's just my word against him [sic], but you know, but regardless, I am asking [for] another chance.

At this point, instead of putting on witnesses or taking the stand himself to explain his attorney's alleged coercion or why he misunderstood the plea, Wolfe began to raise questions about the form of the indictment and about the amount of time that had been allotted to the state to respond to his petition. State Court Record, Vol. II, pp. 17–20. The only witness who did offer testimony was petitioner's former attorney,

---

**4.** In other words, Wolfe appears not to have challenged the concurrent, twenty-year sentence for aggravated assault.

**5.** Wolfe also argued that the kidnapping charge was misplaced. Referring to a manual on defense technique, Wolfe told Judge Lamb that he should not have been charged with kidnapping because "you must take them across the state line ..." State Court Record, Vol. II, p. 25. He

added that this definition of kidnapping did not "fit the element of my crime. Proper sentencing could have been abduction, but as far as kidnapping, I haven't kidnapped [anyone]." *Id.* Wolfe continued to persist in this argument until Judge Lamb told him that in Mississippi, kidnapping does not require crossing the state line. State Court Record, Vol. II., p. 26.

Ki Jones, who could not specifically remember petitioner's guilty plea, but testified that he habitually advises any criminal defendant he represents of the charges against him and his constitutional rights. State Court Record, Vol. II, p. 22.[6] After hearing the evidence, Judge Lamb denied the petition for post-conviction relief, basing his decision partly on the transcript of the guilty plea and the fact that Wolfe had been incarcerated under the sentence for more than two years without voicing any complaints about it. State Court Record, Vol. II, p. 28. Judge Lamb also concluded that the guilty plea met the *Boykin* requirements. On March 27, 1991, the Mississippi Supreme Court affirmed the lower's court's denial of post-conviction relief. The following April, Wolfe filed his petition with this court pursuant to 28 U.S.C. § 2254.

In his report and recommendation to this court, Magistrate Judge Davis agreed with petitioner that the guilty plea violated due process. Looking to *United States v. Stumpf,* 900 F.2d 842 (5th Cir.1990), a decision involving a collateral attack of a guilty plea taken in federal district court[7] and particularly addressing the requirements of Federal Rule 11, the magistrate concluded that the three "core concerns" outlined in that case regarding the proper acceptance of guilty pleas had not been met. As stated in *Stumpf,* 900 F.2d at 844, "the plea must be free from coercion, the accused must understand the nature of the charges against him, and the accused must know the direct consequences of his guilty plea." *Id.* The magistrate found problems with all three of *Stumpf*'s core concerns, concluding that Judge Brown should have personally informed Wolfe of the critical elements of the crime and of the maximum term to which he could have been sentenced. The report and recommendation also found that Judge Brown erred by failing to ascertain whether Wolfe's guilty plea had been coerced or influenced by the promises of others. Whether these errors reached constitutional dimension in this proceeding before a *state* trial judge, especially considering Wolfe's admissions of guilt during his post-conviction proceeding, is the subject of the discussion below.

## DISCUSSION

### 1. Due Process Claims

■ Undoubtedly, the guilty plea hearing before Judge Brown did not meet the technical requirements of Rule 11. Rule 11 requires that the judge address the defendant personally in open court and "inform" the defendant of the nature of the charge and the mandatory and minimum penalty. Fed.R.Crim.P. 11(c). The judge must also ensure that the plea was free from coercion. Fed.R.Crim.P. 11(d). In this case, Judge Brown only asked whether Wolfe's attorney had informed him of the nature of the charge and the concomitant penalties. Moreover, he wholly failed to address the issue of whether Wolfe's plea had been coerced. Nevertheless, Rule 11 and the line of cases that emanate from it such as *Stumpf, Pierce, Bernal, Punch* and *Dayton, supra,* must be used cautiously here and by analogy only.

First of all, the technical requirements of Rule 11 are not necessarily constitutional requirements. *See Frank v. Blackburn,* 646 F.2d 873, 882 ("Rule 11 only sets the standard for federal courts; it does not necessarily establish a constitutional prohibition"). Over the years, Rule 11 has be-

---

**6.** In his petition for post-conviction relief, Wolfe had claimed that his plea of guilty was influenced by his counsel's advice that he could face the death penalty on the kidnapping charge. *See* State Court Record, Vol. II, pp. 22–23. When questioned about this allegation, Jones denied influencing Wolfe's plea on this basis, stating, "I do not ever remember telling him that. In fact, I have my file, and I have no reference ... to ... a possible death sentence." State Court Record, Vol. II, pp. 23–24. Wolfe himself provided no testimony on this claim at the post-conviction proceeding. All that exists in the transcript of the November 17th hearing record on this charge is Judge Lamb's inquiry to Jones as to whether the allegation was true and Jones' negative response and his explanation above. *See* State Court Record, Vol. II, pp. 22–23.

**7.** *Stumpf* involved what the court construed to be a petition for relief pursuant to 28 U.S.C. § 2255.

come quite detailed, embracing well more than *Stumpf*'s core concerns that a plea be free from coercion and made with knowledge of the accusation and its consequences. This evolution caused the Fifth Circuit to note in its *en banc* opinion of *Dayton*, 604 F.2d at 939, that "the rule is now at such a level of complexity as to render letter-perfect compliance with each of its many provisions very difficult indeed." *Id.* The question of whether a technical violation of Rule 11 automatically results in a violation of due process was answered in the negative by the Supreme Court in *United States v. Temmrick*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). Nevertheless, in this circuit, a federal district judge's failure to address any one of Rule 11's core concerns is automatic grounds for reversal. *Dayton*, 604 F.2d at 937. At the same time, a panel of the Fifth Circuit has stated that the above rule applies only where a convicted person seeks reversal on direct appeal. *United States v. Patterson*, 739 F.2d 191, 193 (1984). Where the appeal arises via a post-conviction collateral attack, relief can be obtained only upon a showing of prejudice by the defendant. *Id.*[8] Prejudice may be shown where the Rule 11 violation is jurisdictional or unconstitutional, creates "a fundamental defect resulting in a complete miscarriage of justice," violates the "rudimentary demands of fair procedure," or presents exceptional circumstances. *Id.* at 195.

Even if Wolfe's guilty plea had occurred in federal court where Rule 11 is applicable, it is questionable whether Wolfe would be able to show grounds for relief due to the absence of prejudice in his case. It is highly unlikely that a grave miscarriage of justice or a violation of rudimentary procedure was present in the initial plea session when one considers Wolfe's later admissions of guilt, occurring not once, but repeatedly, at every hearing subsequent to his conviction. Plaintiff's bare allegations that he was coerced into his plea and did not understand his plea, unsubstantiated by proof or explanation of any kind, is

belied by his repeated post-conviction admissions that he committed the crimes upon which he was sentenced. Accordingly, Wolfe's case is not one that warrants the exceptional circumstance of habeas relief.

A second, very important reason why *Stumpf* and other cases involving guilty pleas in federal court must be used cautiously here stems from the fact that this plea was not taken before a federal district judge. As explained by the Fifth Circuit in *Blackburn*, 646 F.2d at 883, "[F]ederal [R]ule [11] offers little guidance in determining when a guilty plea in state court must be set aside. We rely instead on an entirely different and far more limited standard when we review the validity of a state court plea bargain, looking only to see if any constitutional rights have been violated." The touchstone case setting out an accused person's constitutional rights in a guilty plea before a state trial court is *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712. Cited so frequently, the case is remarkable in its brevity and simplicity. *Boykin* held that because the entry of a guilty plea in a criminal trial is attended by the abandonment of several constitutional rights—such as the privilege against compulsory self-incrimination, the right to trial by jury and the right to confront one's accusers—a waiver of these important rights may not be presumed from a silent record. *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712. Later, in *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court carried this reasoning further, holding that in order to meet the requirements of due process, some evidence must exist to show that an accused understands the critical elements of the offense. The Court refused to elaborate as to which elements would be critical to which offenses, noting only that intent is a critical element in the offense of first-degree murder. *Henderson*, 426 U.S. at 647 n. 18, 96 S.Ct. at 2258 n. 18.

---

**8.** *Patterson* involved a federal prisoner's appeal from the denial of his application for post-conviction relief pursuant to 28 U.S.C. § 2255.

*Henderson* does not require that the state judge provide the information as to critical elements, and it appears that the Fifth Circuit has followed this reasoning, although the authority is not always clear. For example, in *Gilliard v. Scroggy*, 847 F.2d 1141 (5th Cir.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989), a panel of the Fifth Circuit reasoned that due process, at a minimum, requires that the *judge* inform the defendant of the critical elements of the crime. *Id.* at 1143 ("to satisfy due process, the state trial judge must, at a minimum, inform the defendant of the critical elements of the crime to ensure that he receives 'real notice of the charges against him.'" (citing *Henderson*, 426 U.S. at 645, 96 S.Ct. at 2258)). Magistrate Judge Davis undoubtedly reads *Gilliard* as requiring a specific instruction from the state trial judge and not merely a request by the trial judge as to whether the accused has been informed of the elements of the crime by his attorney.

■ In their objections to the report and recommendation, respondents suggest that the above language from *Gilliard* reaches beyond the holding intended by *Henderson*. Respondents note that *Henderson* did not require that the trial judge provide the crucial information; instead, the case suggested that *either* an explanation by the trial judge or "representation by defense counsel that the nature of the offense has been explained to the accused" would suffice. *Henderson*, 426 U.S. at 647, 96 S.Ct. at 2258. *Gilliard* gives further cause for concern because the guilty plea there occurred in state court where the strictures of Rule 11 are inapplicable. Without engaging in a lengthy discussion of the case, this court notes that the ultimate holding of *Gilliard* was that Gilliard's plea met the constitutional requirements of due process. Moreover, the

case did not delve into the differences between a trial judge's instruction and an accused person's statement that such an instruction had been given. Rather than rely heavily on one sentence of the panel's opinion in *Gilliard* when that sentence was not determinative in the outcome of the case, this court will adhere to the more simple explanation given in the *en banc* opinion in *Blackburn:*

> Because Rule 11 is not binding on the states, a federal court reviewing a state court plea bargain may only set aside a guilty plea or plea agreement which fails to satisfy due process. If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review.

*Blackburn*, 646 F.2d at 882. Thus, it appears that the relevant question when a guilty plea is taken before a state trial judge is not whether the judge supplied the critical information, but whether the defendant had knowledge of the information. *See, e.g., Buckley v. Butler*, 825 F.2d 895, 899–900 (5th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988); *see also* LaFave & Israel, *Criminal Procedure*, § 20.4 ("[d]ue process is denied only if the defendant was actually unaware of the nature of the charge").

■ Because Wolfe is not challenging his guilty plea as to the aggravated assault charge, the question here is whether Wolfe understood the nature of the charge of kidnapping and understood the maximum and minimum penalties for it. Wolfe stated during his guilty plea that he did, and repeatedly admitted his guilt thereafter. All indications are that he understood the nature of the charge.[9] Finding no violation

---

**9.** In *Henderson,* the Supreme Court explained the two ways in which a plea may be involuntary:

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving. . . . or because he has such an incomplete understanding of the charge that his plea can-

not stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

*Henderson,* 426 U.S. at 645, 96 S.Ct. at 2258. In Wolfe's case, both concerns of the foregoing paragraph were met. First, Wolfe himself ac-

of *Boykin* or due process, the court denies Wolfe's request for habeas relief based on the ground that the judge did not personally inform him of the elements of the charge and the maximum and minimum penalties.[10]

■■■ As to petitioner's charge that his guilty plea was defective because Judge Brown wholly failed to ascertain whether he had been coerced, this argument is more troublesome. However, the court again returns to plaintiff's post-conviction admissions. To rely on coercion as a grounds for habeas relief on the one hand, but freely admit one's guilt on the other, belies the argument that coercion occurred. The court has no evidence to support petitioner's arguments of coercion, while the testimony from Attorney Jones indicates that he gave petitioner a full explanation of his rights and alternatives. A claim of involuntariness may be rebutted by post-conviction evidence that defense counsel did inform the accused of his rights. *Buckley*, 825 F.2d at 900; *Brown v. Jernigan*, 622 F.2d 914, 916 (5th Cir.1980), *cert. denied*,

449 U.S. 958, 101 S.Ct. 368, 66 L.Ed.2d 224 (1980). Of course, Jones' statements would be more persuasive if he specifically remembered the various details of Wolfe's case, but the crowded calendars of criminal defense attorneys often make such detailed memory impossible.[11] Judge Lamb undoubtedly found Jones' testimony believable, and this court finds no reason to disturb that finding.[12]

### 2. The Claim of Ineffective Assistance Of Counsel

■■■ In *Hill v. Lockart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the constitutional standard for effectiveness of counsel is the same in guilty plea cases as in criminal cases which have gone to trial. *See Williams v. Smith*, 888 F.2d 28, 30 (5th Cir.1989).[13] The applicable standard is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, for petitioner to prevail on his motion, he must show that "(1) counsel's errors fell below an objective

---

knowledged during his guilty plea hearing before Judge Brown that his lawyer had explained the crime of kidnapping to him. Second, he later acknowledged in his post-conviction hearing before Judge Lamb that he had abducted someone. This, coupled with his later admissions, is ample proof that he understood the charge.

10. Not only does the court find no violation of due process, the court finds no violation of Mississippi procedures as well. As noted, petitioner relies heavily on Rule 3.03 of the Mississippi Uniform Criminal Rules of Circuit Court Practice. Although Rule 3.03 closely tracks the language of Rule 11, it is less equivocal in its requirement that the *judge* provide the critical information on elements and maximum and minimum penalties than is Rule 11. All the rule requires is that the judge "address" the accused and determine that he understands the nature and consequences of the plea, including the maximum and minimum penalties. Miss.Unif. Crim.R.Cir.Ct.Prac. 3.03.

11. Although this court has resorted to habit evidence on occasion to determine whether a counsel's assistance was effective where counsel could not remember all the specific details of a defendant's guilty plea, the court finds no reason to do so here, given plaintiff's admissions that he "committed those crimes." State Court Record, Vol. II, p. 16.

12. A presumption of correctness is afforded to state court factual findings in petitions brought pursuant to Section 2254. Under Section 2254(d), factual determinations "shall be presumed to be correct" unless one of a number of conditions in the statute are shown to be present. 28 U.S.C. § 2254(d). *See also Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir.1987). While factual findings are accorded such a presumption, a determination of the voluntariness of a plea is a question of federal law. *Id.* The inapplicability of the 2254(d) presumption to findings of federal law, however, does not remove the presumption of correctness that may apply to the historical findings of fact that lead up to the state court's ultimate decision. *Micheaux v. Collins*, 911 F.2d 1083, 1087–88 (5th Cir.1990). Judge Lamb's ultimate decision denying relief was based on the plea of guilty and the transcript of the guilty plea itself, coupled with the fact that Wolfe had served more than two years of his sentence without complaint about the illegality of his plea. This court finds these facts to be persuasive.

13. This case has since been called into doubt on other grounds. *See Taylor v. Whitley*, 933 F.2d 325, 328–29 (5th Cir.1991) (noting that the conclusory approach to double jeopardy in *Williams* is perhaps no longer valid).

standard of reasonable competence, and (2) that but for counsel's errors, the outcome of the proceeding would have been different." *Williams*, 888 F.2d at 30 (citing *Strickland*). In deciding whether counsel's behavior fell below an objective standard of reasonableness, the first part of the *Strickland* test, this court's scrutiny must be "highly deferential" and must take care to eliminate "the distorting effects of hindsight." *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir.1988). As the Supreme Court has explained, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after a conviction." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. In a guilty plea context, petitioner meets the second prong of the test if he shows that "but for counsel's unprofessional or erroneous advice, the petitioner would have pleaded not guilty and elected to go to trial." *Williams*, 888 F.2d at 30.

In this case, neither prong of *Strickland* has been met. Petitioner has not explained to this court, nor did he explain in his post-conviction hearing, how his counsel erred by advising him to plead guilty or why this advice fell below the standard of reasonable competence. He has not shown that but for counsel's advice, he would have proceeded to trial. In hearings subsequent to the plea, Wolfe was more interested in obtaining the court's mercy than in refuting his guilt. Mere allegations from a petitioner that he would have demanded a trial if the advice had been different are insufficient to establish reasonable probability that he would have done so. *Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir.1988).

For all of the above reasons, the court declines to accept the report and recommendation of the magistrate judge. Accordingly, Wolfe's petition for habeas relief is denied.