PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, Mims, and Powell, JJ., and Russell, S.J.

CHARLES N. HAWKINS

OPINION BY
v.  Record No. 131822          SENIOR JUSTICE CHARLES S. RUSSELL
                                        October 31, 2014
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider the sufficiency of the evidence required to support a conviction for possession of counterfeit currency in violation of Code § 18.2-173.

Facts and Proceedings

Charles N. Hawkins was indicted in the Circuit Court of the City of Portsmouth for the possession of more than ten forged bank notes, as described in Code § 18.2-170, with the knowledge that they were forged and with the intent to utter or employ them as true.  At a bench trial, he was convicted and sentenced to five years imprisonment, with all but two years and two months suspended.

At trial, Sergeant Travis Smaglo of the Portsmouth Police Department testified that on May 14, 2012 he was advised that a subject who was being sought on several felony arrest warrants could be found at a pool hall in Portsmouth known as "Big Daddy's."  The subject was described as a man wearing a white hat and blue checkered shorts who would be standing near the pool tables.  Because the outstanding warrants included charges

for murder and use of a firearm by a convicted felon, Smaglo went to the pool hall accompanied by several other officers. Entering the pool hall, Smaglo saw Hawkins standing near a pool table, wearing a white hat and blue checkered shorts.

Smaglo and another officer approached Hawkins, who put his right hand into the right pocket of his shorts. Smaglo told Hawkins to take his hand out of his pocket. Hawkins hesitated. Smaglo then drew his weapon and ordered Hawkins to remove his hand from his pocket. Hawkins complied, but when he withdrew his hand it contained what Smaglo described as a "large sum of money" that Hawkins threw to the floor. Smaglo re-holstered his weapon and handcuffed Hawkins.

Smaglo picked up the money he had seen Hawkins throw to the floor and took it outside, where Hawkins was being held under arrest. Hawkins' possessions were being collected by the other officers. Smaglo handed the cash to them and told them it was also Hawkins' personal property. Hearing this, Hawkins said, "That's not my money." Smaglo replied, "Well, yes it is. You threw it on the floor. Why would you not want your money?" Hawkins continued to insist that the money was not his.

Later, the officers examined the money and concluded that it was counterfeit. It consisted of 18 twenty-dollar bills. Among them, the bills shared only four serial numbers: five bills shared one serial number, six shared a second number, four

shared a third number, and three bills shared a fourth number. At trial, the Commonwealth presented expert testimony, including that of an agent of the United States Secret Service, that the bills were counterfeit. They were not printed on genuine currency paper, they lacked the color-shifting ink used on genuine currency, and they bore "tiny pink, blue and yellow dots . . . indicative of ink-jet printing."

Hawkins moved to strike the Commonwealth's evidence. The court denied the motion and heard defense testimony. The court denied Hawkins' renewed motion to strike and found him guilty as charged. Hawkins appealed to the Court of Appeals, which affirmed the conviction in an unpublished opinion. Hawkins v. Commonwealth, Record No. 2098-12-1, 2013 Va. App. LEXIS 299, at *8 (Oct. 22, 2013). We awarded Hawkins an appeal.

Analysis

Code § 18.2-173 provides:

> If any person have in his possession forged bank notes or forged or base coin, such as are mentioned in § 18.2-170, knowing the same to be forged or base, with the intent to utter or employ the same as true, or to sell, exchange, or deliver them, so as to enable any other person to utter or employ them as true, he shall, if the number of such notes or coins in his possession at the same time, be ten or more, be guilty of a Class 6 felony; and if the number be less than ten, he shall be guilty of a Class 3 misdemeanor.

3

Hawkins assigns error to the circuit court's denial of his motions to strike the Commonwealth's evidence and the Court of Appeals' affirmance of that ruling. He contends that the Commonwealth failed to prove that he possessed the bills, that he knew they were forged, or that he had the intent to utter or employ them as true.

In reviewing the sufficiency of the evidence to support a conviction, we will affirm the judgment unless it is plainly wrong or without evidence to support it. Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008); Code § 8.01-680. In making this determination, we must examine the evidence that supports the conviction in the light most favorable to the Commonwealth, allowing it the benefit of all reasonable inferences that may be drawn from the evidence. Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011).

Sergeant Smaglo testified that he watched while Hawkins, at gunpoint, removed his right hand from his pocket, that Hawkins' hand held the money in question, and that Hawkins threw the money to the floor. The trial judge, as trier of fact, found that testimony to be credible. That alone is sufficient to support a finding that Hawkins possessed the bills.

The circuit court could also draw the reasonable inference, from Hawkins' guilty behavior, that he knew the bills to be

4

counterfeit. Guilty knowledge must often be shown by circumstantial evidence. Circumstances tending to prove guilty knowledge include the defendant's acts, statements, and conduct. Young v. Commonwealth, 275 Va. 587, 591, 659 S.E.2d 308, 310 (2008). Such conduct may serve as evidence that the defendant knew the nature and character of the contraband that was in his possession. Id. The court could reasonably infer Hawkins' guilty knowledge from his furtive behavior when the police approached him. When Smaglo asked him to take his right hand out of his pocket, he hesitated. Smaglo then had to order him at gunpoint to remove his hand from his pocket. Hawkins only then complied, but in doing so, removed the bills from his pocket and threw them to the floor of the pool hall. Thereafter, he repeatedly denied that the bills were his.

A false account, similar to flight from a crime scene, is a circumstance a fact-finder may properly consider as evidence of guilty knowledge. Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004). "Probably the strongest evidence of guilty knowledge is an attempt to abandon counterfeit currency when detection is feared." Ruiz v. United States, 374 F.2d 619, 620 (5th Cir. 1967); see also United States v. King, 326 F.2d 415, 416 (6th Cir. 1964) (throwing counterfeit money to the floor cognizable in the circumstances showing knowledge and intent). These circumstances were more than sufficient to

5

support an inference that Hawkins knew the bills to be counterfeit.

Hawkins finally argues that the Commonwealth failed to prove that he possessed the bills with intent to utter or employ them as true. "Utter" in this context "is an assertion by word or action that a writing known to be forged is good and valid." Bateman v. Commonwealth, 205 Va. 595, 600, 139 S.E.2d 102, 106 (1964). Intent may be inferred from the facts and circumstances of the case and shown by the acts of the defendant. Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995).

The federal statute applicable to the possession of counterfeit currency, 18 U.S.C. § 472, contains a similar element of intent to utter, and federal cases applying it are therefore helpful. See, e.g., Andrews v. Browne, 276 Va. 141, 147-48, 662 S.E.2d 58, 62 (2008) (observing that where Virginia and federal statutes regulating the same subject share common definition of statutory term, "it is appropriate to look to the federal courts' interpretation of the same term" when construing the Virginia statute). Those cases hold that several circumstances will support a finding of the requisite intent. Among those are: possession of a large number of counterfeit bills, United States v. Berrios, 443 F. Supp. 408, 410 (E.D. Pa. 1978); taking counterfeit bills to a commercial establishment, where cash transactions are likely, see United States v.

6

<u>Mitchell</u>, 176 Fed. Appx. 676 (7th Cir. 2006); and segregating counterfeit bills from genuine currency. <u>United States v. Perez</u>, 698 F.2d 1168, 1171 (11th Cir. 1983) (keeping counterfeit currency in a separate pocket).

The Commonwealth's evidence established each of these circumstances. Hawkins was shown to possess counterfeit currency having a facial value of $360, in 18 twenty-dollar bills. He had taken it to a pool hall, where frequent cash transactions could be anticipated. The record is silent as to whether Hawkins had any genuine currency with him when he was arrested, but if he did it was obviously segregated from the counterfeit bills he threw to the floor. We hold these circumstances sufficient to support an inference that Hawkins had the requisite intent to utter the counterfeit money in his possession.

Hawkins makes the ingenious additional argument that if he brought counterfeit bills to the pool hall to pay gambling debts or to purchase drugs or other contraband, he would have lacked the intent to employ them as true, as contemplated by Code § 18.2-173. This, he contends, is a reasonable hypothesis of innocence that the Commonwealth's evidence failed to exclude. We do not agree.

Although federal counterfeiting laws have as their primary purpose the protection of the national currency, state laws on

the same subject are aimed primarily at protecting their citizens from thefts and forgeries. Hendrick v. Commonwealth, 32 Va. (5 Leigh) 707, 713 (1834); Brooks v. United States, 76 F.2d 871, 872 (1935). When counterfeit currency is put into circulation, even if originally for an illegal purpose, someone will ultimately be defrauded by its use. United States v. Hagan, 487 F.2d 897, 898 (5th Cir. 1973).

## Conclusion

For the reasons stated, we hold that the circuit court correctly denied the motions to strike the Commonwealth's evidence and that the Court of Appeals did not err in affirming the conviction. We will affirm the judgment of the Court of Appeals.

Affirmed.