United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 28, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals

## for the Fifth Circuit

m 03-50485

ANDREW FLORES,

Petitioner-Appellant,

VERSUS

DOUG DRETKE,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Western District of Texas
m SA-98-CV-1169

Before HIGGINBOTHAM, SMITH, and
CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has

(continued...)

Andrew Flores applies for a certificate of
appealability (COA) of the denial of his

---

[*](...continued)
determined that this opinion should not be pub-
lished and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

petition for writ of habeas corpus. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, ___, 123 S. Ct. 1029, 1039 (2003). We deny the application.

## I.

In determining whether to issue a COA, we conduct an overview of the petitioner's claims and make a general assessment of their merits. The standard of review is whether a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)-(1)(A); *Miller-El*, 537 U.S. at ___, 123 S. Ct. at 1039. This threshold showing does not require the petitioner to demonstrate that his appeal will succeed. *Id.* Where a district court rejects a claim on the merits, the petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* at 1040 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The determination of whether a COA should issue must be made "through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000). Under that scheme, deference to a state court decision is required for any claim that was adjudicated on the merits in state court, unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *Yarborough v. Gentry*, No. 02-1597, 2003 U.S. LEXIS 7701 (U.S. Oct. 20, 2003) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," 28 U.S.C. § 2254(d)(2).

Section 2254(d)(1) speaks to questions of law and mixed questions of fact and law re-

solved by the state courts. *See Moore v. Johnson*, 225 F.3d 495, 501(5th Cir. 2000). The phrase "clearly established federal law" refers to the "holdings, as opposed to the dicta of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under the related § 2254(e)(1), a federal habeas court will presume correct the factual findings of the state court unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." *See also Miller-El*, 537 U.S. at ___, 123 S. Ct. at 1042.

## II.

Flores asserts that he was not competent to make his plea and that it was not entered into knowingly, intelligently, and voluntarily. With respect to his competence, Flores asserts that he suffers from psychological and neurological impairments that prevented him from completely understanding the proceedings against him. Therefore, he argues, there is room for reasonable jurists to differ on whether his impairments prevented him from being able to make the rational choices necessary to enter a guilty plea.

The test for deciding competence to enter a guilty plea is "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understandingSSand whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see also Godinez v. Moran*, 509 U.S. 389, 398-99 (1993). Because a state court's competency finding is presumed correct, a petitioner bears a heavy burden in contesting his competency during federal collateral review. *DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994).

In arguing that he was incompetent to enter a guilty plea, Flores relies on (1) a history of childhood sexual and physical abuse, long-term drug abuse, and resulting emotional and organic brain impairments; (2) the testimony of psychiatrist Raymond Potterf at the evidentiary hearing held during the state habeas proceeding, which Flores contends established that, because of his mental impairments, he tends to respond to authority figures in "almost a frozen status . . . very fearful"; (3) Potterf's testimony that Flores would "probably go along with" a directive from an attorney; and (4) Potterf's suggestion that if Flores were directed by an authority figure, he would plead guilty to "take the choice that would get him out of the situation as quickly as possible." Potterf, however, disavowed any personal knowledge of, and did not express any opinion as to whether, Flores actually experienced his "frozen state" at a time near entering his guilty plea, or that he felt pressured to plead guilty by his attorney.

Ultimately, Potterf expressed the opinion that Flores was competent to enter his guilty plea. Moreover, Flores has presented no evidence that he suffered from a "frozen status" at or near the time he entered his guilty plea. During trial, the state judge observed that "[t]hroughout the proceedings, from pre-trial through his punishment phase, [Flores] displayed through his testimony, his mannerisms, his disposition, and his behavior, that he was competent as defined."

Moreover, the federal district court noted that there is no evidence that Flores's attorney ever asked or pressured him to plead guilty. Accordingly, the state court made no "unreasonable interpretation of the facts in light of the evidence presented," *Godinez*, 509 U.S. at 400, in concluding that Flores was competent to enter a guilty plea.

Although Flores also asserted that his guilty plea was not made knowingly, intelligently, and voluntarily,[1] he was admonished at length by the trial court regarding the nature and consequences of a guilty plea. As the federal district court observed, Flores represented, on the record in open court, that he was pleading guilty because he was guilty and for no other reason, that no threats or promises induced his plea, that he understood that he would receive either a life sentence without parole for thirty-five years or the death penalty, that he was waiving the right to a jury trial, that he was pleading of his own free will, and that he understood that his plea was an admission to all the elements of his offense.

Flores argues that despite all this, his aforementioned mental and emotional impairments forced him to respond to the authority of the court in a fearful and "frozen status." Again, he relies on Potterf's testimony. To the contrary, however, the trial court's observation of Flores's demeanor during the guilty plea hearing and throughout the trial gave no indication that Flores experienced such an episode. He likewise has produced no evidence that he experienced the "frozen status" about which Potterf speculated.

We see no reason to differ with the district court's conclusion that Flores' plea was knowing, intelligent, and voluntary. Accordingly, the state court made no "unreasonable interpretation of the facts in light of evidence presented" in so concluding.

---

[1] *See Godinez*, 509 U.S. at 400; *Boykin v. Alabama*, 395 U.S. 238, 244 (1969); *Taylor v. Whitney*, 933 F.2d 325, 329 (5th Cir. 1991).

*See Godinez*, 509 U.S. at 400.

## III.

Flores contends that his trial attorney was ineffective in two respects, depriving him of his Sixth Amendment right to counsel. First, he argues that counsel was inadequate by failing to object to the trial court's decision to grant the prosecutor's challenge for cause of a venireman, which failure waived the issue for appellate review. Second, Flores asserts that his attorney failed to present mitigating details about his background and history, which he suggests would have swayed jurors to spare his life.

To prevail on a claim of ineffective assistance, a habeas petitioner must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). He must show (1) that counsel rendered deficient performance and (2) that counsel's deficiency resulted in actual prejudice. For a federal court to grant habeas relief for ineffective assistance, the "state court must have unreasonably applied the [*Washington*] standard." *Santellan v. Cockrell*, 271 F.3d 190, 198 (5th Cir. 2001). A petitioner must show that "in light of all circumstances," his representation "fell below an objective standard of reasonableness" or "prevailing professional norms." *Washington*, 466 U.S. at 688-90; *see Gentry*, 2003 U.S. LEXIS 7701, at *6-*7. Judicial scrutiny of the counsel's performance must be "highly deferential" and cognizant of the "distorting effect of hindsight." *Washington*, 466 U.S. at 689-90.

### A.

Flores' first argument stems from the failure of his attorney to object to the prosecution's challenge to prospective juror Roundtree, who said that she strongly opposed the death penalty in all circumstances. The proper standard for determining when a prospective juror may be excluded for cause because of his views on capital punishment is to decide whether "the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (quoting *Adams v. Texas*, 448 U.S. 12, 45 (1980)).

Roundtree informed the court and the parties that she did not believe in capital punishment and did not wish to serve on a jury where the death penalty was an option. She repeatedly insisted that she would not answer the special issues based on the evidence if those answers resulted in the death penalty and would not obey the court's instructions regarding the law. These circumstances constituted a "substantial impairment" to her ability to answer the punishment issues, and thus she was properly subject to a challenge for cause. Flores urges that Roundtree never said she would "consciously distort" her answer during the punishment phase, but such an express articulation of a substantial impairment of her ability to answer the punishment issues is unnecessarySSshe was properly subject to a challenge for cause.

Flores's lawyer reasonably could have concluded the same and realized that his objection would have been frivolous. A "[f]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness." *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998))

### B.

Flores claims deficient counsel with respect to his attorney's failure to investigate and introduce, as mitigation evidence, elements of

4

his background and mental disposition during the sentencing proceedings. As the district court observed, however, Flores presented no evidence to support the claim that his trial attorney's investigation was unreasonable.

The important question is whether counsel was inadequate in failing to introduce the suggested elements at trial. Flores argues that his attorney should have presented "evidence of the neurologic brain impairment of the Applicant, the history of physical and sexual abuse of the Applicant, the lack of a father figure for the Applicant during his formative years, the Applicant's severe problems in identity crisis, the drug history of the Applicant and his siblings, and the intoxication of the Applicant during the time of the offense." Flores also produced a juror from his case, Ms. Zuazua, who says that had she heard the details about Flores's traumatic childhood, she would not have voted for the death penalty.

We must, however, judge Flores' counsel's decisions relative to the circumstances at the time. *Washington*, 466 U.S. at 688-90. As the district court observed, Flores's suggested background informationSSof a history of crisis and violenceSScuts both ways. His lack of self-control and his history of violence and drug abuse, especially, demonstrate violent and unstable propensities. At trial, Flores's attorney took the approach of highlighting his good side, bringing witnesses to testify to his good character and arguing that the murder was an aberration. Introducing the evidence that Flores now suggests would have undermined that strategy.

In short, the district court reasonably concluded that Flores's attorney had valid strategic reasons for shifting focus away from Flor- es's troubles. It accordingly was not deficient performance to decline to introduce the subject evidence in mitigation.

The application for COA is DENIED.